**Dated: September 14, 2016**

**The following is ORDERED:**



TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:
DANIEL PEYRANO,                         CASE NO. 14-80402-TRC
                                                                      CHAPTER 7
,
           Debtor.

DANIEL PEYRANO,
           Plaintiff

v.                                                                        CASE NO. 15-8011-TRC

JOE SOTELO

and

JENNIFER HEFLIN,
           Defendants.

MEMORANDUM OPINION

Plaintiff Daniel Peyrano seeks an order from this Court finding that Defendant Joe Sotelo violated the discharge injunction. After conducting a trial in this matter, the Court finds that Defendant Joe Sotelo did violate the discharge injunction and should therefore be found in

contempt of court. The Court also awards damages including lost wages and attorney fees to Peyrano.[1]

**Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C. §§ 105 and 524. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

**Findings of Fact**

The Court makes the following findings of fact.

1. On March 18, 2013, Sotelo filed a lawsuit in Rogers County, Oklahoma District Court, Case No. CJ 2013-175 ("state court case") against Peyrano, El Pueblo Grande restaurant, and other business partners regarding the failure of the El Pueblo restaurant venture. Sotelo was represented by attorney Richard Badillo.

2. The Rogers County Court issued a summons on March 18, 2013. On October 1, 2013, the District Court of Rogers County quashed the first attempt to obtain service of process on Peyrano for good cause. The Court did not designate a time within which a summons should be reissued and served on Peyrano.

3. On April 24, 2014, Peyrano filed a chapter 7 bankruptcy in this court, identifying his debts as primarily business debts rather than consumer debts. He listed Sotelo as an unsecured creditor, identifying the debt as contingent, unliquidated and disputed on schedule F, and listed Sotelo on the court's mailing matrix of creditors. Ron Brown was Peyrano's counsel in the bankruptcy.

---

[1] Defendant Jennifer Heflin filed bankruptcy in the Northern District of Oklahoma the day before trial on August 16, 2016, Case No. 16-11475-M. She was dismissed without prejudice by Plaintiff at the outset of trial on August 17, 2016. Heflin voluntarily agreed to testify at the trial of this matter.

4.      As is the practice in all bankruptcy cases, the Bankruptcy Noticing Center ("BNC") mailed a notice of the bankruptcy to Peyrano's creditors.  Among those who were mailed notice included Sotelo in care of his counsel of record in the state court case, Richard Badillo, Richard Badillo, and El Pueblo Grande, Inc. in Catoosa.  The notice stated that there appeared to be no assets available for distribution to creditors and instructed that no proofs of claim should be filed at that time.  The notice also set the deadline of August 3, 2014 for filing complaints objecting to discharge under 11 U.S.C. § 727 or objecting to dischargeability under 11 U.S.C. §§ 523(a)(2), (4), or (6).  The notice also stated:

> **Creditors May Not Take Certain Actions:**
> In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

5.      No objections to discharge or dischargeability were filed.  Peyrano received a discharge on August 7, 2014.  The BNC mailed notice of the Order of Discharge to Sotelo in care of Badillo, to Badillo, and to El Pueblo Grande.  The notice of discharge stated:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

6.      Neither Badillo nor Heflin entered an appearance in the bankruptcy case, nor did they file a change of address or otherwise notify the bankruptcy court that Heflin had replaced Badillo as Sotelo's attorney in the state court case.  The bankruptcy case was closed on August 21, 2014.

7. While Peyrano's bankruptcy was pending, Badillo filed a motion to withdraw as counsel for Sotelo in the state court case due to some type of brain injury. Badillo asked that Jennifer Heflin be substituted as counsel for Badillo. The Rogers County District Court granted his motion on June 4, 2014. Badillo delivered some materials to Heflin regarding the state court case but Heflin did not recall that he informed her of Peyrano's bankruptcy.

8. On August 15, 2014, Heflin filed her Entry of Appearance in the state court case, and on behalf of Sotelo caused several summons to be issued. Her intent was to serve the defendants who had not yet been served, including Peyrano. Sotelo knew that the summons were issued, having reimbursed Heflin for the cost of issuing the summons.

9. Peyrano's wife saw the entry regarding the issuance of summons on the state court docket sheet. Peyrano then called his bankruptcy attorney, Ron Brown, to ask him about the issuance of the summons.

10. Brown called Heflin to notify her that Peyrano had filed a no asset bankruptcy case. He gave Heflin the case number, and notified her that the debt to Sotelo had been discharged. Heflin responded that she did not believe notice of the bankruptcy was proper nor that the debt had been discharged since notice was not served on her, Sotelo's attorney, nor on Sotelo personally.

11. Heflin testified that she could not recall this phone conversation and questioned its existence since it would have been a "random, out of the blue" phone call by Brown. However, she admitted that the conversation may have occurred.[2] The August 2014 summons was not served on Peyrano.

---

[2] Heflin suffered a concussion in December 2013 and did not work for approximately two and one half months thereafter. Once recovered, she believed herself to be fully competent to practice law and represent Sotelo. She seemed to offer this injury as a partial reason for her inability to recall details related to this case. However, she also stated that she did not believe her concussion impaired her ability to practice law.

12. In March of 2015, Heflin had two more summons issued in the state court case on behalf of Sotelo. This was in response to a meeting she had with Sotelo wherein he instructed her to move forward with the state court case.[3]

13. The purpose of the issuance of this summons was to collect upon Peyrano's debt to Sotelo.

14. On April 4, 2015, a private process server served Peyrano with a summons and copy of Sotelo's state court petition at Peyrano's home. The process server, who was obtained by Sotelo, filed her Affidavit of Process Server on April 7, 2015, confirming proof of service on Peyrano the evening of April 4, 2015.

15. On April 6, 2015, Peyrano called Brown to inform Brown that he had been served with the summons and petition in Sotelo's state court case.

16. Brown called Heflin to protest the service, and to remind Heflin that the debt to Sotelo had been discharged. Brown asked Heflin whether she recalled his phone call to her in August of 2014. She responded that she did recall it; did Brown not recall her response to him at that time? Brown advised Heflin that she had a duty to dismiss Peyrano from the state court case. Heflin refused to dismiss Peyrano because Sotelo was adamant about continuing the litigation against Peyrano. Brown memorialized this phone call in a handwritten note, which included the date of the call, April 6, 2014, and Heflin's comment: "Sotelo adamant to continue w/litigation." This note was admitted as an exhibit at trial.

17. Heflin did not recall the particulars of the phone conversation. However, she agreed that Brown informed her of Peyrano's bankruptcy. She advised Brown that because she was not a bankruptcy attorney she would need to look into the matter, but that she did not think giving notice

---

[3] This fact was established in Heflin's deposition, a transcript of which was admitted as an exhibit at trial.

of the bankruptcy to a creditor's attorney was sufficient to effect a discharge of Sotelo's debt. She could not recall if this conversation was the first time she learned about Peyrano's bankruptcy.

18. Heflin told Brown that Sotelo wanted to proceed in his state court case against Peyrano.

19. Within a few days of Brown and Heflin's phone conversation, Heflin notified Sotelo's wife that Brown had advised her about Peyrano's bankruptcy.

20. Heflin ceased representing Sotelo, although she did not submit a formal withdrawal to a court.

21. Heflin did not dismiss Peyrano from the state court case because she was no longer representing Sotelo and believed she had no authority to act on his behalf.

22. Heflin denied ever discussing Peyrano's bankruptcy with Sotelo; however, she dealt almost exclusively with Sotelo's wife regarding business matters, rather than Sotelo himself.

23. Sotelo heard that Peyrano filed bankruptcy, but he did not remember when he learned about it, nor who told him. Either Badillo or Heflin mentioned something to him about Peyrano's bankruptcy.

24. Although he knew that Peyrano may have filed bankruptcy, Sotelo never checked to verify this information, nor did he instruct his attorney to do so.

25. Sotelo's deposition testimony was admitted as an exhibit. During his deposition, Sotelo testified that the subject of Peyrano filing bankruptcy never came up in his discussion with Heflin, but he also said that he heard or knew about the bankruptcy during conversations he had with Heflin, estimating that he had five conversations with her.

26. Sotelo left it up to Heflin to find out if the Peyrano's bankruptcy applied to him and find out if the bankruptcy would help him or hurt him in the state court case.

27. Sotelo instructed Heflin to have a summons issued and served on Peyrano.

28. Sotelo admitted that he might have known prior to having the summons served in April of 2015 that Peyrano had filed bankruptcy.

29. Sotelo expected that once he served Peyrano with the summons and petition, Peyrano would help him pay the restaurant debts, especially the taxes that were owed. Collecting the debt was the purpose of issuing and serving the summons on Peyrano.

30. Brown filed a Suggestion of Bankruptcy in the state court case on April 8, 2015. Brown admitted that he should have filed the Suggestion of Bankruptcy earlier but relied upon the oral notice he gave to Heflin in August of 2014 to stop further proceedings against Peyrano.

31. Brown does not always file a formal suggestion of bankruptcy when representing debtors.

32. Brown mailed a file-stamped copy of the Suggestion of Bankruptcy to Jennifer Heflin at her address listed on the state court docket sheet. This address was incorrect and was not the address listed on her entry of appearance given to the state court clerk's office.

33. On May 29, 2015, an order was entered in the state court case substituting James Linger for Jennifer Heflin as counsel for Sotelo. Notice of this order was mailed by Linger to Zachary Barron, as counsel for Peyrano. Linger did not mail it to Brown or Peyrano.

34. A motion to reopen the bankruptcy case was filed June 19, 2015, and the case was reopened July 7, 2015. The motion's stated purpose was to file an adversary proceeding against Sotelo for violation of the discharge injunction. Sotelo was mailed notice of the motion, order reopening, and of the adversary complaint.

35. This adversary case was filed on July 16, 2015, for violation of the discharge injunction, damages and equitable relief in the form of a directive to the state court to dismiss Peyrano as a defendant in the state court case. Initially, only Sotelo was a named defendant. However, once Sotelo's deposition was taken, Heflin was added as a defendant.

36. On behalf of Sotelo, Linger dismissed Peyrano from the state court case on September 10, 2015.

37. Linger entered his appearance as Sotelo's attorney in the adversary case on September 15, 2015.

38. Peyrano hired attorneys to take action to enforce the discharge injunction. His attorney fees and costs up to the date of trial totaled $ 18,386.62.

39. Peyrano has been employed as a truck driver during this lawsuit. He is assigned two-day routes, and is paid by miles and weight of the load. His pay averages $ 400 a day, or $ 800 per route. He estimated that he was unable to accept approximately eight or nine routes to attend meetings or court dates related to this lawsuit.

**Conclusions of Law**

In a chapter 7 case, 11 U.S.C. § 727(b) discharges a debtor "from all debts that arose before the date of the order for relief," except as provided in § 523. Section 524(a)(2) of the Bankruptcy Code provides that a discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt [discharged under § 727] as a personal liability of the debtor, whether or not discharge of such debt is waived ….

Section 524(a) operates automatically upon the entry of an order of discharge. It prevents any act intended to cause a debtor to repay a discharged debt, including legal proceedings, letters, phone calls, threats of criminal proceedings or similar actions. The purpose of § 524 is to prevent a debtor from being pursued for the payment of discharged debts, precluding virtually all actions by a creditor to collect personally from the debtor. Norton Bankruptcy Law & Practice 3d, § 58:2 (2016); *see also Walker v. Wilde (In re Walker),* 927 F.2d 1138, 1142 (10th Cir. 1991). Only

through enforcement of the discharge order can the discharge provided by the Bankruptcy Code provide the debtor with a "fresh start."

Bankruptcy courts have the power to sanction a creditor for violation of the discharge injunction under their civil contempt powers of § 105(a). *Paul v. Iglehart (In re Paul),* 534 F.3d 1303, 1306-07 (10th Cir. 2008). To hold a party in contempt, the burden rests with the movant to show by clear and convincing evidence that the creditor (1) had actual or constructive knowledge of the discharged debt and (2) intended the actions which were taken in violation of the injunction. *See In re Zilog,* 450 F.3d 996, 1007 (9th Cir. 2006); *Otero v. Green Tree Servicing, LLC (In re Otero)*, 498 B.R. 313 (Bankr. D.N.M. 2013); *Torres v. Chase Bank U.S.A. N.A. (In re Torres),* 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007).

The Court believes that the evidence clearly established that Sotelo knew of the bankruptcy and discharged debt prior to the issuance and service of the summons on Peyrano in April of 2015. It is likely that Sotelo actually knew in August of 2014 that Peyrano had filed bankruptcy and received a discharge because he paid for Heflin to have summons issued that month. Sotelo's testimony was often evasive and contradictory. Sotelo's testimony was designed to avoid directly answering the critical questions of what did he know and when did he know it. His and Heflin's recall of certain facts while forgetting others appeared to be self-serving. This raises significant doubt in the Court's mind regarding their credibility and the accuracy of their versions of the facts. The Court did not find Sotelo or Heflin to be credible witnesses, nor were they candid with the Court. Although the Court has no doubt that Sotelo lacked sophistication regarding the bankruptcy process, the evidence is clear and convincing to the Court that he did know that Peyrano had filed bankruptcy and that the bankruptcy negatively impacted his ability to collect any money from Peyrano. His defense was built on vague memories or a failure to recall. Despite having heard

Peyrano planned to file bankruptcy, Sotelo did not instruct his attorneys to confirm the details of the bankruptcy, perhaps to avoid being charged with notice and application of the discharge injunction.

In contrast, Peyrano's version of events was built on specific recollections that match the physical records in the state court case. Peyrano testified that his wife was viewing the docket sheet of the state court case on the internet and noticed that summons had been issued mid-August of 2014. Peyrano called Brown to ask what this meant. Peyrano's call prompted Brown to call Heflin who was Sotelo's counsel and inform her of Peyrano's discharge in bankruptcy. Brown's testimony that Sotelo's attorney was put on notice in August of 2014 is credible to the Court. Heflin's assertion that she did not think the phone call occurred because it would have been random and "out of the blue" with no possible impetus was couched with a disclaimer that the conversation could have happened as Brown testified, she just didn't remember it. She also could not recall how many times she spoke with Sotelo about Peyrano's bankruptcy. She failed to explain why she chose August to have the summons issued since she had been representing Sotelo since June. The Order of Discharge was mailed out August 8, 2014. The summons was issued August 15, 2014. Neither Heflin nor Sotelo could explain why they decided to have a new summons issued and served at this time, having taken no action against Peyrano for more than a year in the case. Consequently, the Court does not find their testimony credible.

There can be no question that Peyrano met his duty to give proper notice of his bankruptcy case to Sotelo. He listed the debt and mailed notice of the filing and discharge to Sotelo's attorney in the pending state court case, Mr. Badillo. "[N]otice to a creditor's attorney ... is ordinarily considered sufficient if the attorney received knowledge of the case while representing the creditor in enforcing the creditor's claim against the debtor." *In re Schicke,* 97 Fed. Appx. 249 (10th Cir.

2004) *citing* 4 Collier on Bankruptcy § 523.09[4][a] (15th ed. 2003). Notice given to a creditor's attorney is imputed to the creditor, and upon receipt of that notice creditors must affirmatively protect their rights in the bankruptcy by informing themselves of applicable deadlines. *In re Schicke*, 290 B.R. 792, 800 (10th Cir. BAP 2003) *aff'd* 97 Fed. Appx. 249 (10th Cir. 2004). And, it is reasonable to assume that an attorney would relay notice of a bankruptcy to his client. *Id.* at 803. The Court believes that Heflin was given notice of the bankruptcy in August of 2014. As his attorney, notice was imputed to Sotelo. He had constructive knowledge of Peyrano's bankruptcy.

Yet, even if the Court does not impute notice given to his attorneys to him, the evidence supports a finding that Sotelo personally knew about the bankruptcy. Sotelo cannot recall who told him about Peyrano's bankruptcy – he said "we heard that he was maybe going to file." He also said that it could have been Badillo who informed him. Based upon the totality of Sotelo's testimony and his admissions that he may have known about Peyrano's bankruptcy and had heard about it, the Court is convinced that he did have actual notice at least by March of 2015 when the new summons was issued and when it was served in April of 2015. And, it is clear that Sotelo intentionally had the summons issued, secured the process server, and caused Peyrano to be served with the summons with the intent that service would prompt Peyrano to pay the discharged debt.

Sotelo argued that regardless of his knowledge or intent, the service of the summons and petition on Peyrano in April of 2015 was not a violation of the discharge injunction because the summons was void under Oklahoma law.[4] The Court finds that this argument is without merit.

---

[4] Sotelo cites 12 O.S. § 2004(I) which provides: "If service of process is not made upon a defendant within one hundred eighty (180) days after the filing of the petition and the plaintiff cannot show good cause why such service was not made within that period, the action may be dismissed as to that defendant without prejudice upon the court's own initiative with notice to the plaintiff or upon motion. The action shall not be dismissed where a summons was served on the defendant within one hundred eighty (180) days after the filing of the petition and a court later holds that the summons or its service was invalid. After a court quashes a summons or its service, a new

Regardless of the legal validity of the summons, Sotelo's intent in having the summons issued and served on Peyrano was to cause and coerce him to pay Sotelo for the restaurant debts that had been discharged. Service of the summons and petition was a clear violation of the discharge injunction. Peyrano was certainly not aware of any legal defect in the summons or service. Sotelo admitted that his intention in serving Peyrano with the summons and petition was to collect the debt he believed Peyrano still owed him, regardless of the bankruptcy.

Sotelo also argues that he relied upon advice of legal counsel who caused the summons to be reissued and served on Peyrano. He asks that he not be held accountable nor be punished for relying on erroneous legal advice. Courts have found that a creditor's good faith is not relevant when deciding whether a violation of the automatic stay occurs under 11 U.S.C. § 362. Section 524 is similar to the automatic stay in purpose and effect. Sotelo's good faith or reliance on counsel is not relevant to the question of whether a violation of the discharge injunction occurred. *See In re Distad,* 2009 WL 1324037 * 6, No. 07-02047 (Bankr. Utah, May 8, 2009); *Sciarrino v. Mendoza,* 201 B.R. 541 (E.D. Calif. 1996).

**Sanction and Damages**

Where a willful violation of the discharge injunction occurs, courts have generally awarded actual damages, attorney fees, and punitive damages as a sanction for the violation. *In re Culley,*

---

summons may be served on the defendant within a time specified by the judge. If the new summons is not served within the specified time, the action shall be deemed to have been dismissed without prejudice as to that defendant." When the original summons issued to Peyrano was quashed due to improper service in 2013, the state court judge gave no time period within which a new summons had to be issued and served. It is unclear whether Peyrano would have been dismissed by the state court pursuant to this statute. What is clear, however, is that neither Sotelo nor Heflin thought he was dismissed since they had two more summons issued by the state court with the intention of serving Peyrano.

347 B.R. 115 (10th Cir. BAP 2006) (unpublished). *See also* Collier on Bankruptcy (16th ed.) ¶524.02.

The Court finds that an award of damages in the form of lost wages and an award of attorney fees and costs is appropriate. Peyrano was served with a summons from the state court. This summons required him to hire legal counsel to take some action to obtain a dismissal of the state court case or risk further action against him. Sotelo did not dismiss Peyrano from the state court case until well after this adversary case was filed. Brown requested that Peyrano be dismissed in April of 2015, and he filed the Suggestion of Bankruptcy in the state court case. Heflin called Sotelo or his wife to tell them about Brown's phone call, Peyrano's bankruptcy, and to withdraw from the case. The last thing Brown was told was that Sotelo wanted to continue pursuing Peyrano in state court. Sotelo was mailed notice of Peyrano's Motion to Reopen his bankruptcy case on June 22, 2015. This Motion stated that Peyrano intended to pursue an action for violation of the discharge injunction against Sotelo regarding pursuit of the state court case. Sotelo did not dismiss Peyrano nor attempt to minimize any further legal action. This adversary case was filed July 16, 2015, and Sotelo was noticed by mail in accordance with Fed. R. Bankr. P. 7004 on July 21, 2015. Finally, on September 10, 2015, he filed a formal dismissal of Peyrano in the state court case. Sotelo had plenty of time to dismiss Peyrano before the bankruptcy case was reopened and the adversary case was filed. The issuance and service of the summons created a need for Peyrano to take action to protect himself and for his attorney to take action to effectuate the purpose of the discharge injunction. Consequently, an award of attorney fees and costs is an appropriate sanction. The amount of the award of attorney fees and costs shall be determined after Peyrano's counsel files an updated, verified application for attorney fees and costs. Sotelo may file a response to the application if he desires.

In addition to an award of attorney fees and costs, Peyrano is entitled to recover actual damages for lost wages. He was required to devote time to consult with his attorneys and attend court-related hearings and meetings. Peyrano testified that he was unable to accept truck driving assignments and therefore suffered a loss of wages related to his lawsuit. Each driving assignment consists of a two day route. He is paid by miles and weight of the load, with his daily pay averaging $ 400, or $800 per route. He stated that he missed eight or nine routes to attend to matters related to this lawsuit, but he did not offer specific dates or routes lost. He provided no documentation or an exhibit regarding lost wages. The Court finds that an appropriate award for lost wages is $ 3,200.00.

The Court declines to award damages for mental anguish as there was minimal evidence presented. It also declines to award punitive damages against Sotelo.

**Conclusion**

Sotelo knew of Peyrano's bankruptcy and authorized the issuance and service of the summons with the intent to get Peyrano to pay the discharged debt. Therefore, the Court finds Defendant Joe Sotelo in civil contempt for violation of the discharge injunction of 11 U.S.C. § 524. The Court also finds Defendant Sotelo liable to Plaintiff for actual damages for lost wages in the amount of $ 3,200.00, as well as costs and attorney fees in an amount to be determined.

The Court will enter a separate order setting deadlines for Peyrano's counsel to file a verified application for attorney fees and costs and for Sotelo's response.

A separate judgment in favor of Plaintiff Peyrano for $ 3,200 in actual damages and attorney fees and costs shall be entered after the amount of attorney fees and expenses is determined.

###